1  LINDA M. DARDARIAN, CA Bar No. 131001
   NINA RABIN, CA Bar No. 229403
2  GOLDSTEIN, DEMCHAK, BALLER,
      BORGEN & DARDARIAN
3  300 Lakeside Drive, Suite 1000
   Oakland, CA 94612
4  (510) 763-9800
   (510) 835-1417 (fax)
5  ldar@gdblegal.com
   nrabin@gdblegal.com
6
   MICHAEL R. LOZEAU, CA Bar No. 142893
7  LAW OFFICES OF MICHAEL R. LOZEAU
   1516 Oak Street, Suite 216
8  Alameda, CA 94501
   (510) 749-9102
9  (510) 749-9103 (fax)
   mrlozeau@lozeaulaw.com
10
   Attorneys for Plaintiff CALIFORNIA
11 SPORTFISHING PROTECTION ALLIANCE

12 PAUL P. "SKIP" SPAULDING, III, CA Bar No. 83922
   DAVID J. LAZERWITZ, CA Bar No. 221349
13 FARELLA BRAUN & MARTEL, LLP
   235 Montgomery Street
14 San Francisco, CA 94104
   (415) 954-4400
15 (415) 954-4480 (fax)
   sspaulding@fbm.com
16 dlazerwitz@fbm.com

17
   Attorneys for Defendant
18 MERIDIAN GOLD COMPANY, INC.

19                    UNITED STATES DISTRICT COURT

20                    EASTERN DISTRICT OF CALIFORNIA

21

22
   CALIFORNIA SPORTFISHING PROTECTION   )  Case No.: 1:06-cv-00023-REC-LJO
23 ALLIANCE, a non-profit corporation,  )
                                        )  ~~[PROPOSED]~~ CONSENT AGREEMENT
24          Plaintiff,                   )  AND ORDER
                                        )
25 vs.                                   )  Federal Water Pollution Control Act, 33 U.S.C.
                                        )  §§ 1251 to 1387;
26 MERIDIAN GOLD COMPANY, a corporation  )
                                        )  California Health and Safety Code, § 25249.5;
27          Defendant.                   )
                                        )  Resource Conservation and Recovery Act, 42
28 _____  )  U.S.C. §§ 6901 to 6692

FILED

MAY – 9 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

1    **WHEREAS**, California Sportfishing Protection Alliance ("CSPA") is a non-profit public

2    benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife,

3    and natural resources of California's waters.

4    **WHEREAS**, Meridian Gold Company, Inc. and its related or affiliated entities, including

5    Meridian Beartrack Company (collectively "Meridian"), formerly operated the Royal Mountain King

6    Mine, which is located at 4461 Rock Creek Road near the City of Copperopolis, California. Meridian

7    has been performing management, reclamation and closure of the Royal Mountain King Mine site

8    ("RMKM Site") from the late 1980s to the present.

9    **WHEREAS**, CSPA and Meridian shall sometimes be referred to herein individually as "Party"

10   and collectively as "Parties."

11   **WHEREAS**, Meridian conducted gold mining, including heap leach mining, at the RMKM

12   Site from 1988 to July 1994. During active mining, approximately 56 million tons of ore and

13   overburden were removed from three mining pits at the site. Seven Waste Management Units

14   ("WMUs") remain at the site. These include a former mining pit now filled with a combination of

15   wastewater, groundwater and storm water known as Skyrocket Pit Lake and three overburden disposal

16   sites ("ODSs"): Gold Knoll ODS, Flotation Tailings Reservoir ODS, and West ODS, all of which

17   consist of discarded waste rock excavated from active mining pits. The other three WMUs are

18   engineered WMUs known as the Process Water Pond, the Leached Concentrates Residue Facility, and

19   the Flotation Tailings Reservoir. The entire RMKM Site shall sometimes hereinafter be referred to as

20   the "Facility." A map of the RMKM Site is attached hereto as Exhibit A and is hereby incorporated by

21   reference.

22   **WHEREAS**, the Federal Water Pollution Control Act, also known as the Clean Water Act

23   ("CWA"), prohibits persons from discharging pollutants from point sources to waters of the United

24   States without obtaining a National Pollutant Discharge Elimination System ("NPDES") permit. 33

25   U.S.C. § 1311(a).

26   **WHEREAS**, the California Safe Drinking Water and Toxic Enforcement Act of 1986

27   ("Proposition 65") prohibits businesses from knowingly discharging or releasing listed chemicals into

28   water or onto land where it passes or probably will pass into a source of drinking water. Cal. Health &

1   Safety Code § 25249.5.

2       **WHEREAS**, the federal Resource Conservation and Recovery Act ("RCRA") prohibits the
3   owner or operator of a treatment, storage, or disposal facility from contributing to the past or present
4   handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may
5   present an imminent and substantial endangerment to health or the environment. 42 U.S.C. §
6   6972(a)(1)(B).

7       **WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant
8   to the NPDES, General Permit No. CAS000001 [State Water Resources Control Board], Water Quality
9   Order No. 91-13-DWQ (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued
10  pursuant to Section 402 of the CWA, 33 U.S.C. § 1342 (hereinafter "General Permit").

11      **WHEREAS**, on June 1, 2005, CSPA and Watershed Enforcers provided to Meridian a written
12  notice of alleged violations of the CWA, Proposition 65, RCRA and the General Permit and notified
13  Meridian therein of CSPA's intention to file suit against Meridian ("CSPA Notice Letter"). The CSPA
14  Notice Letter was sent to the Administrator of the United States Environmental Protection Agency
15  ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources
16  Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board,
17  Central Valley Region ("Regional Board"); and to Meridian, pursuant to Section 505 of the CWA, 33
18  U.S.C. § 1365, Cal. Health & Safety Code § 25249.7(d)(1), and 42 U.S.C. § 6972(b)(2)(A) of RCRA.
19  A true and correct copy of the CSPA Notice Letter is attached hereto as Exhibit B, and is hereby
20  incorporated by reference.

21      **WHEREAS**, on January 6, 2006, CSPA filed a Complaint against Meridian in the United
22  States District Court, Eastern District of California, alleging violations of the CWA, Proposition 65
23  and the General Permit.

24      **WHEREAS**, on April 6, 2006, CSPA filed a First Amended Complaint ("Complaint") against
25  Meridian in the United States District Court, Eastern District of California, alleging violations of the
26  RCRA in addition to the existing allegations.

27      **WHEREAS**, Meridian denies CSPA's allegations that it has violated the CWA, Proposition
28  65, RCRA and/or the General Permit and denies that it has any liability whatsoever to CSPA. The

1  Parties agree that nothing in this Consent Agreement and Order ("Consent Agreement") shall be

2  construed as, and Meridian does not intend to imply, any admission as to any fact, finding, issue of

3  law, or violation of law, nor shall compliance with this Consent Agreement be construed as an

4  admission by Meridian of any fact, finding, conclusion, issue of law, or violation of law.

5  **WHEREAS,** on July 29, 2005, Meridian submitted an application for a NPDES permit to the

6  California Regional Water Quality Control Board, Central Valley Region ("Regional Board"). On

7  September 29, 2005, Meridian submitted a revised NPDES permit application to the Regional Board.

8  **WHEREAS,** the Parties anticipate that the Regional Board will consider Meridian's

9  application and propose issuance of a NPDES permit for the Facility on a schedule that has not yet

10  been determined.

11  **WHEREAS,** the Parties believe the upcoming NPDES permit proceeding before the Regional

12  Board provides an appropriate forum for the Parties to address many of the technical issues raised by

13  the CSPA Notice Letter and Complaint.

14  **WHEREAS,** the Parties believe that the NPDES permit process will also address the

15  Proposition 65 and RCRA allegations regarding discharges into surface water.

16  **WHEREAS,** the Parties have decided that it is in the best interests of both Parties to resolve

17  the litigation without the taking of any evidence or findings of fact or law, and the Parties would like to

18  avoid prolonged and costly litigation.

19  **WHEREAS,** this Consent Agreement shall be submitted to the United States Department of

20  Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c), and the other

21  procedures in 33 U.S.C. § 1365 associated with approval of consent agreements shall be followed.

22  **WHEREAS,** CSPA shall follow the procedures set forth in Cal. Health & Safety Code

23  § 25249.7 for notice and approval of a proposed settlement, and the Court shall make the requisite

24  findings set forth in section 25249.7(f)(4).

25  **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING**

26  **PARTIES, AND ORDERED BY THE COURT, AS FOLLOWS:**

27  **I.    COMMITMENTS OF MERIDIAN**

28  **A.    NPDES Permit, Proposition 65 and RCRA Claims**

1.       The Parties agree that Meridian shall obtain a NPDES permit for discharges at the Facility as soon as possible. The Parties recognize that the Regional Board, and possibly the State Board, will control the timing, evaluation and issuance of this permit. Meridian and CSPA agree that they shall jointly advocate for the earliest possible issuance of this permit by these agencies. Neither Party will be in violation of any obligation in this paragraph if it utilizes any administrative procedure, including an administrative appeal, available to it under law regarding the NPDES permit.

2.       CSPA and Meridian agree to inform and facilitate the issuance of Meridian's NPDES permit for the Facility by establishing a process whereby the Parties, their counsel, and their scientific experts meet together, attempt to reach consensus, and jointly or separately provide comments and otherwise assist the Regional Board and/or State Board in the upcoming proceeding to issue a NPDES permit for the Facility. Meridian agrees to make a one-time financial payment to CSPA in the amount of $120,000 for the purpose of paying the estimated costs of CSPA and its experts' participation in this process. Meridian shall pay this sum to CSPA within 30 calendar days of the Effective Date of this Consent Agreement, and CSPA shall create a "Meridian Permit Issuance Fund" to hold these monies. CSPA's use of the Meridian Permit Issuance Fund shall be limited to the expenses for: (1) CSPA's activities relating to the Regional Board's proceeding to issue a NPDES permit for the Facility; (2) CSPA's activities relating to any subsequent administrative appeal to the State Board; and (3) CSPA's activities regarding the General Permit set forth in Paragraphs 9 through 14. CSPA may use up to $15,000 of the Meridian Permit Issuance Fund to support its non-legal staff time and costs related to the above listed activities. The remaining portion of the fund will support the expenses of its scientific experts. All expert fees paid for by the Meridian Permit Issuance Fund shall be based on rates not to exceed the reasonable hourly rates as set forth in Exhibit C, attached hereto and hereby incorporated by reference, or as reasonably increased by the experts once at the end of each calendar year following the Effective Date of this Order. The Parties agree that Meridian shall have no obligation or liability to pay CSPA, its experts, or its attorneys any additional monies relating to this expert participation process, including any expert fees, even if these administrative proceedings are more complicated or more protracted than the Parties currently estimate they will be, except as specifically provided in Paragraph 20.

1    3.    In an effort to resolve any issues that may arise regarding the terms of any NPDES

2    permit proposed by the Regional Board, the Parties, accompanied by their duly retained experts, and,

3    as each Party deems necessary, their counsel, agree to meet as follows:

4        a.    Within 30 days of the Effective Date of this Consent Agreement, the Parties and

5    their experts shall meet to discuss and try to resolve any differences or issues they have relating to the

6    terms of the proposed NPDES permit for the Facility.

7        b.    After the Parties have their initial meeting, they shall seek a preliminary scoping

8    meeting with Regional Board staff and the Parties to discuss the Parties' views on the appropriate

9    terms of a proposed NPDES Permit for the Facility. Either Party may also seek and hold separate

10   meetings or communications on this or other subjects with the Regional Board or State Board, or their

11   staff, at any time.

12       c.    The Parties shall request that the Regional Board provide the Parties with a draft

13   tentative NPDES permit at least 45 days prior to the Regional Board's issuance of any proposed permit

14   duly noticed for public comment and hearing. Within 21 days of the release of any such draft tentative

15   permit by the Regional Board, the Parties, including their experts, shall meet to discuss the terms of the

16   draft tentative permit. During the meeting, the Parties shall attempt in good faith to resolve any

17   disagreements they may have over the proposed terms of the draft tentative permit. The Parties shall

18   prepare a set of joint comments setting forth those issues relating to the terms of the draft tentative

19   NPDES permit on which they agree and those issues relating to the terms of the draft tentative NPDES

20   permit on which they could not reach a consensus. The Parties shall submit joint comments to the

21   Regional Board within 14 days of meeting and conferring on the draft tentative permit. Along with the

22   comments, the Parties shall jointly seek a meeting with the Regional Board's staff in order to discuss

23   the joint comments prior to the date the Regional Board is expected to release a proposed NPDES

24   permit for public comment. Either Party may also seek and hold separate meetings or communications

25   on this subject with the Regional Board or State Board, or any Board staff, at any time.

26       d.    Not later than 14 days from the Regional Board's publication of a notice

27   requesting public comment on a proposed NPDES permit for the Facility, the Parties shall meet and

28   confer to discuss the terms of such proposed NPDES permit, and prepare joint comments consistent

1    with the procedures set forth in the immediately preceding paragraph. Although the Parties shall not

2    be required to seek a meeting with Regional Board staff during the public comment period, they may

3    seek such a meeting in their discretion, jointly or separately.

4         e.    In addition to the above required meetings, the Parties agree to engage in

5    additional conversations and meetings to attempt in good faith to resolve any outstanding issues

6    relating to the terms of any proposed NPDES permit for the Facility. The Parties also agree to

7    facilitate contacts between their respective experts, including by telephone or in person, to discuss

8    technical issues relating to the terms of any draft or proposed NPDES permit. The Parties retain the

9    right to listen in or otherwise be present during any contact between the Parties' experts, or during any

10   contact of the experts jointly with the Regional Board or State Board, or their staff. Either Party may

11   also seek and hold separate meetings or communications on these subjects with the Regional Board or

12   State Board, or their staff, at any time.

13        4.    CSPA shall not advocate in any forum, including before the Regional Board or State

14   Board in any permit or enforcement proceedings, that Meridian install any additional liners or caps on

15   the Facility's ODSs or WMUs, and CSPA shall not use any moneys from the Meridian Permit Issuance

16   Fund for this purpose. CSPA also agrees not to provide technical assistance or funding to any other

17   person to advocate for the implementation of additional liners or caps on ODSs or WMUs at the

18   Facility. CSPA is not precluded, however, from advocating for the use of additional or alternative

19   surface management features other than caps and liners on the Facility's ODSs. CSPA also is not

20   precluded from discussing the installation of liners and caps with third parties, so long as it does not

21   solicit the third party to do the advocacy that CSPA agrees it will not do directly and does not provide

22   any third party with financial support or technical assistance in its efforts relating to the installation of

23   liners and caps on ODSs or WMUs at the Facility.

24        5.    CSPA shall not use any moneys from the Meridian Permit Issuance Fund for costs, fees,

25   or any other expenses incurred by or on behalf of any other organization or person appearing before

26   the Regional Board or State Board, other than CSPA's own non-legal staff and designated experts.

27   CSPA shall not use any moneys from the Meridian Permit Issuance Fund for costs, fees or any other

28   expenses related to any subsequent court challenge to a NPDES permit issued for the Facility. Any

residual funds remaining in the Meridian Permit Issuance Fund on the termination date of this Order shall be paid by CSPA to the entity identified in Paragraph 15 below, subject to the use restrictions and conditions set forth in Paragraphs 16 and 18, on the date of termination.

6. At the end of the administrative process, when either the Regional Board or, if an appeal has been taken, the State Board has acted in final form, and consistent with the timeline set forth in Paragraph 3, CSPA will provide a report to Meridian and the United States Department of Justice listing the number of hours, multiplied by the hourly rate, of each CSPA staff member and expert who participated in the administrative process, and designate the remaining amount, if any, to be paid to the entity identified in Paragraph 15, below.

**B. General Industrial Storm Water Permit Claim**

7. In order to prevent storm water from coming into contact with contaminants at the Facility and/or to prevent the discharge of waste, contaminated storm water and unauthorized non-storm water from the Facility into the waters of the State and of the United States, Meridian shall implement structural and non-structural best management practices ("BMPs") that are equivalent to the best available technology economically achievable ("BAT") and the best conventional pollutant control technology ("BCT") at the Facility. Meridian shall maintain all structural BMPs at the RMKM Site in good operating condition.

8. By August 31, 2006, Meridian shall update the Facility's Stormwater Pollution Prevention Plan ("SWPPP") prepared pursuant to the General Permit to incorporate all BMPs currently in place at the Facility. A copy of the amended SWPPP shall be sent to CSPA within seven (7) days of completion.

9. The Parties agree that, within thirty (30) days of the written request of CSPA, they shall jointly conduct an in-person visit to the RMKM Site. Such request by CSPA shall not be made prior to July 1, 2007 nor, unless agreed to by the Parties, subsequent to 60 days from CSPA's receipt of Meridian's 2006-2007 Annual Report prepared and submitted pursuant to Section B(14) of the General Permit. The purpose of the visit shall be for CSPA to review the SWPPP and site conditions at the Facility to determine what, if any, further storm water structural BMPs it believes may be appropriate

1   for areas at the Facility subject to regulation under the General Permit. Within thirty (30) days of this

2   site visit, CSPA and Meridian shall confer, either in person or by telephone, to discuss any

3   recommendations for structural BMPs that CSPA believes are appropriate in such areas. The Parties

4   shall affirmatively seek a consensus to implement further structural BMPs, and if such a consensus is

5   reached, Meridian shall implement those BMPs as soon as reasonably practicable. The Parties agree

6   that, if they cannot reach a consensus on whether any structural BMPs should be implemented:

7   (A) Meridian shall not be obligated under this Consent Agreement to implement any other structural or

8   non-structural BMPs at the RMKM Site; and (B) CSPA shall not make any motion to the court under

9   this Consent Agreement or institute any other kind of legal proceeding of any kind to compel the

10  adoption or implementation of any structural or non-structural BMPs at the RMKM Site during the

11  term of, or based on any activities or events occurring during the term of, this Consent Agreement.

12        10.    Meridian shall collect samples from the monitoring locations at the Facility set forth in

13  the storm water monitoring program attached as Exhibit D.

14        11.    Meridian shall collect four samples from each of the monitoring locations set forth in

15  Exhibit D during four separate rain events. Meridian will attempt to collect samples during two rain

16  events in the 2005-2006 wet season and two rain events in the 2006-2007 wet season. If Meridian is

17  unable to collect two samples during the 2005-2006 wet season for any of the specified locations, the

18  number of missed samples shall be taken from such locations during rain events in the 2006-2007 wet

19  season, so that a total of four samples are taken at each of the monitoring locations by the end of the

20  2006-2007 wet season. Each storm water sample shall be analyzed for the constituents set forth in the

21  storm water monitoring program attached as Exhibit D. If a particular sampling location does not

22  exhibit any flows during two consecutive sampling events, Meridian shall no longer be required to

23  conduct sampling at that location. The samples shall be taken and analyzed consistent with the

24  technical sampling and analysis protocols of the General Permit.

25        12.    Meridian shall maintain a log that measures the amount of daily rainfall occurring at the

26  Facility. Such log shall be made available to CSPA within ten (10) days after receipt of a request.

27        13.    Results from Meridian's sampling and analysis shall be provided to CSPA within

28  fourteen (14) days of receipt of the final written laboratory report from each sampling event.

1    14.    Meridian shall permit representatives of CSPA to perform up to one (1) site visit to the

2    Facility per calendar year in 2007 and 2008 during normal daylight business hours during the term of

3    this Consent Agreement, provided that CSPA provides Meridian with at least thirty (30) days' prior

4    written notice of the site visit and all CSPA site visit participants execute Meridian's site access and

5    non-liability agreement.

6    **II.    MITIGATION PAYMENTS, FEES AND COSTS**

7    15.    As mitigation of the violations of the CWA and, in the alternative, RCRA alleged in the

8    CSPA Notice Letter and Complaint, Meridian shall pay the sum of $177,500 to the Rose Foundation

9    (hereinafter "Foundation") to fund locally-based, water quality related projects in the Littlejohns Creek

10   watershed, the lower San Joaquin River or its tributaries, or the southern portion of the Sacramento-

11   San Joaquin River Delta. Such projects shall be limited to those focusing on creation or restoration of

12   riparian areas, environmental education, environmental research, public health, and fish and wildlife.

13   None of this monetary payment shall be used to fund litigation, direct regulatory advocacy or lobbying

14   activities.

15   16.    As mitigation of the violations of Proposition 65 alleged in the CSPA Notice Letter and

16   Complaint, Meridian shall pay the sum of $177,500 distributed as follows: 75 percent of the payment

17   mitigating the alleged violations of Proposition 65 ($133,125) shall be paid to the Foundation to fund

18   locally-based, water quality related projects in the Littlejohns Creek watershed, the lower San Joaquin

19   River or its tributaries, or the southern portion of the Sacramento-San Joaquin River Delta. Such

20   projects shall be limited to those focusing on creation or restoration of riparian areas, environmental

21   education, environmental research, public health, and fish and wildlife. None of this monetary

22   payment made pursuant to this Agreement shall be used to fund litigation, direct regulatory advocacy

23   or lobbying activities. The remaining 25 percent ($44,375) of the payment shall be paid to CSPA

24   consistent with Health and Safety Code § 25249.12(d).

25   17.    Meridian shall make the payments required by Paragraphs 15 and 16 within thirty (30)

26   days of the Effective Date of the Consent Agreement.

27

28

9
[PROPOSED] CONSENT AGREEMENT AND ORDER - CASE NO : 1:06-CV-00023-REC-LJO

1      18.    Payments to the Foundation shall be subject to the following conditions: (a) the

2    payments or any portion thereof shall not be disbursed or otherwise granted directly or indirectly to

3    CSPA; (b) projects funded by the payments shall be designed to benefit water quality in the Littlejohns

4    Creek watershed, the lower San Joaquin River or their tributaries or the southern portion of the

5    Sacramento-San Joaquin River Delta; (c) they shall be earmarked for creation or restoration of riparian

6    areas, environmental education, environmental research, public health, and fish and wildlife, but not

7    litigation, direct regulatory advocacy or lobbying activities; and (d) one year from the effective date of

8    the Consent Agreement, and each year thereafter on such date until such time as all of the payments to

9    the Foundation has been awarded to qualifying grant recipients, the Foundation shall submit an annual

10    report to the Parties, describing the amount and recipients of each grant made from the payment.

11      19.    Meridian shall reimburse CSPA in the amount of $275,000 to defray CSPA's

12    investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs

13    incurred as a result of investigating the activities at the Facility, providing notice to Meridian, filing

14    and pursuing the Complaint, negotiating a resolution of this action in the public interest, and

15    monitoring and implementing the terms of this Consent Agreement, except as provided in Paragraph

16    20, below.  Such payment shall be made within thirty (30) days of the Effective Date of the Consent

17    Agreement.  CSPA agrees that Meridian shall not have any future obligation to pay any attorneys' fees

18    and costs incurred by CSPA during any administrative proceedings relating to any permits for the

19    Facility, including for the expert process set forth in paragraphs 2-6 herein.

20    **III.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT**

21      20.    If a dispute under this Consent Agreement arises, or if either Party believes that a

22    breach of this Consent Agreement has occurred, the Parties shall hold a meeting within thirty (30) days

23    of receiving written notification from the other Party of a request for a meeting. This notification shall

24    explicitly state the nature, underlying facts and legal grounds for the dispute or alleged breach. At this

25    meeting, the Parties shall discuss the merits of the dispute and whether a violation has occurred, and

26    they shall seek to develop a mutually agreed upon plan, including implementation dates, to resolve the

27    alleged violation or dispute. If the Parties fail to meet and confer or if the meeting does not resolve the

28

1  issue, and after at least seven days have elapsed since the meet and confer occurred or should have
2  occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a
3  motion before the United States District Court for the Eastern District of California, which shall retain
4  jurisdiction over the action for the limited purposes of enforcement of the terms of this Consent
5  Agreement. The Parties shall be entitled to seek fees and costs incurred in any such meet and confer
6  and/or motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the
7  Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such
8  provision, including that the Court shall award reasonable attorneys' fees and costs to Meridian if it
9  prevails in the dispute and the Court concludes that CSPA's action to enforce the Consent Agreement
10  was frivolous, unreasonable or without foundation.

11      21.      Upon Court approval and entry of this Consent Agreement, CSPA, on its own behalf
12  and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys,
13  representatives, and employees, as well as on behalf of Watershed Enforcers (which CSPA verifies has
14  been merged into CSPA and no longer exists as an independent entity), releases all persons, including
15  Meridian and its officers, directors, employees, shareholders, agents, attorneys, representatives,
16  affiliated companies, parents, subsidiaries, predecessors, successors and assigns, past and present,
17  from, and waives all claims, whether known or unknown, anticipated or not anticipated, actual or
18  contingent, suspected or unsuspected, for injunctive relief, damages, penalties, fines, sanctions,
19  mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum
20  incurred or claimed or which could have been claimed in this Action, or which was alleged in the
21  CSPA Notice Letter, including but not limited to the alleged failure of Meridian to comply with the
22  Clean Water Act (33 U.S.C. §§ 1251, et seq.), Proposition 65 (Health and Safety Code, §§ 25249.5, et
23  seq.), the Porter-Cologne Water Quality Control Act (Water Code, §§ 13000, et seq.), including the
24  General Industrial Permit, or RCRA (42 U.S.C. §§ 6901, et seq.) at the Facility (hereinafter "Claims"),
25  up to the date this Consent Agreement terminates as provided in Paragraph 28, except as specifically
26  provided for in Paragraph 20 of this Consent Agreement. This release includes a release, and covenant
27  not to sue, for any claims of injunctive relief, damage, penalties, fines, sanctions, mitigation, fees
28  (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed

11

1   or which could have been claimed with respect to any Meridian activities at the Facility in alleged

2   violation of the Clean Water Act, Proposition 65, the Porter-Cologne Water Quality Control Act,

3   including the General Industrial Permit or any successor General Permit, or RCRA that may arise

4   during the term of this Consent Agreement up to its termination, except as specifically provided for in

5   Paragraph 20 of this Consent Agreement. The Parties further expressly waive any rights or benefits

6   available to them under the provisions of California Civil Code § 1542, which provides as follows:

7       A general release does not extend to claims which the creditor does
        not know or suspect to exist in his favor at the time of executing
8       the release, which if known by him must have materially affected
        his settlement with the debtor.
9

10      22.     Upon Court approval and entry of this Consent Agreement, Meridian, on its own behalf

11  and on behalf of its officers, directors, employees, shareholders, agents, attorneys, representatives,

12  affiliated companies, parents, subsidiaries, predecessors, successors and assigns, releases CSPA (and

13  its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives,

14  and employees) past and present, from, and waives all claims, whether known or unknown, anticipated

15  or not anticipated, actual or contingent, suspected or unsuspected, which arise from or pertain to this

16  Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses

17  or any other sum incurred or claimed or which could have been claimed for matters associated with or

18  related to this Action, except as specifically provided for in Paragraph 20 of this Consent Agreement.

19      23.     CSPA will dismiss its Complaint with prejudice after the Court approves and enters the

20  Consent Agreement. To implement this provision and to ensure that the Court retains subject matter

21  jurisdiction to enforce the Consent Agreement, the Parties will file with the Court a proposed form of

22  Stipulation and Order which shall provide: (A) for dismissal of the Complaint and all claims therein

23  with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); and (B) that the Court shall retain

24  and have jurisdiction over the Parties with respect to enforcement of the Consent Agreement.

25      24.     The United States District Court for the Eastern District of California shall retain and

26  will have jurisdiction over all of the Parties to this Consent Agreement for the resolution of any

27  disputes that may arise under this Consent Agreement. Each Party, on behalf of itself and its

28  successors or assigns, expressly consents to the jurisdiction of the United States District Court for the

1   Eastern District of California for these purposes. Any Party claiming that another Party has failed to
2   comply, after attempting to work out disputes informally utilizing the mechanism in Paragraph 20 may,
3   by motion, ask the Court approving this Consent Agreement to enforce the Consent Agreement
4   obligations. The Party bringing the motion shall carry the burden of proof to demonstrate that the
5   other Party is in breach of its Consent Agreement obligations.

6   25.   The Parties enter into this Consent Agreement for the purpose of avoiding prolonged
7   and costly litigation. Nothing in this Consent Agreement shall be construed as, and Meridian expressly
8   does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor
9   shall compliance with this Consent Agreement constitute or be construed as an admission by Meridian
10  of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not
11  diminish or otherwise affect the obligations, responsibilities, and duties of the Parties under this
12  Consent Agreement.

13  ## IV.   MISCELLANEOUS PROVISIONS

14  26.   The Effective Date shall be the date that the Court enters an order approving this
15  Consent Agreement.

16  27.   For the purposes of this Consent Agreement, the Parties stipulate that the United States
17  District Court for the Eastern District of California has jurisdiction over the Parties and subject matter
18  of this Action. The Parties stipulate that venue is appropriate in the Eastern District of California. The
19  Parties further stipulate for purposes of this Consent Agreement that the Complaint states a claim upon
20  which relief may be granted against Meridian pursuant to Section 505 of the Clean Water Act, 33
21  U.S.C. § 1365, Proposition 65, Cal. Health & Safety Code § 25249.5, and RCRA, 42 U.S.C.
22  § 6972(a)(1)(B), and that CSPA has standing to bring this action.

23  28.   The Consent Agreement shall continue in effect until September 15, 2008 or thirty (30)
24  days after the issuance of a final NPDES permit for the Facility and the conclusion with prejudice of
25  any administrative appeal of said NPDES permit, whichever is the later event, and it shall
26  automatically terminate on that date.

27

28

13

1    29.    During the term of this Consent Agreement, each Party shall provide the other Party

2    with a copy of all documents submitted to the Regional Water Quality Control Board and/or the State

3    Water Resources Control Board regarding Meridian's NPDES permit application and all documents

4    and reports submitted to the Regional Board and/or State Board as required by the General Permit.

5    Each Party shall send such documents and reports to the other Party, via first class mail or email

6    transmission, contemporaneously with its submission to such agency.

7    30.    Any notices or other documents required or provided for by this Consent Agreement or

8    related thereto that are to be provided to either of the Parties pursuant to this Consent Agreement shall

9    be sent by both facsimile or e-mail transmission and first-class mail to each of the following

10   representatives of the Parties. Notice shall be deemed to be given and received on the date received by

11   facsimile or e-mail transmission, if such notice is given by facsimile or e-mail transmission to all

12   recipients between 9:00 a.m. and 5:00 p.m. Pacific Standard Time ("PST") on a business weekday. If

13   notice is given by facsimile or e-mail transmission after 5:00 p.m. PST on a weekday or on a weekend

14   day, notice shall be deemed received on the next succeeding weekday. Notices or documents for

15   CSPA shall be sent to:

16       Bill Jennings, Executive Director
         California Sportfishing Protection Alliance
17       3536 Rainier Road
         Stockton, CA 95204
18       Fax: 209-464-5174
         E-mail: deltakeep@aol.com
19
     With copies sent to:
20
         Linda M. Dardarian, Esq.
21       Nina Rabin, Esq.
         Goldstein, Demchak, Baller, Borgen & Dardarian
22       300 Lakeside Drive, Suite 1000
         Oakland, CA 94612
23       Fax: (510) 835-1417
         E-mail: ldar@gdblegal.com
24               nrabin@gdblegal.com

25       Michael R. Lozeau, Esq.
         Law Office of Michael R. Lozeau
26       1516 Oak Street, Suite 216
         Alameda, CA 94501
27       Fax: (510) 749-9103
         E-mail: mrlozeau@lozeaulaw.com
28

                                        14

1    Notices or documents for Meridian shall be sent to:

2        Edgar A. Smith
         Vice President Operations
3        Meridian Gold Inc.
         9670 Gateway Drive, Suite 200
4        Reno, Nevada 89521
         Fax     (775) 850-3756
5        E-mail: edgar.smith@meridiangold.com

6    With copies sent to:

7        Paul P. Spaulding, III, Esq.
         David J. Lazerwitz, Esq.
8        Farella Braun + Martel, LLP
         235 Montgomery Street, 17th Floor
9        San Francisco, CA 94104
         Fax: (415) 954-4480
10       Email: sspaulding@fbm.com
          dlazerwitz@fbm.com

11

         James E. Good, Esq.
12       Gresham Savage Nolan & Tilden PC
         550 East Hospitality Lane, Suite 300
13       San Bernardino, CA 92408-4205
         Fax:    (909) 888-2120
14       E-Mail: jim.good@greshamsavage.com

15            Each Party shall notify the other Parties of any change in their contact information within 14

16 days of any such change by using the procedures set forth in this paragraph.

17            31.     No Party shall be considered to be in default in the performance of any of its obligations

18 when a failure to perform is due to circumstances beyond the Party's reasonable control, which shall

19 be referred to as a "Force Majeure." A Force Majeure event renders performance impossible,

20 impracticable, or unduly burdensome, and includes such events as an act of God, war, fire, earthquake,

21 flood, unusually severe weather conditions, strikes, lockouts and restraint by court order or public

22 authority. A Force Majeure event does not include normal inclement weather, such as anything less

23 than or equal to a 50 year/24 hour storm event, or inability to pay. A Force Majeure event does include

24 any actions, delays or decisions by a government agency, including the Regional Board or the State

25 Board, which delays or precludes a Party's ability to perform a Consent Agreement obligation in a

26 timely manner. Any Party seeking to rely upon this paragraph shall have the burden of establishing

27 that it could not reasonably have been expected to avoid, and which by exercise of due diligence has

28 been unable to overcome, the Force Majeure. If a Party seeks to invoke this paragraph, it shall notify

1   the other Party in writing as soon as reasonably possible, specifying the particular action that could not

2   be performed and the specific reason for the non-performance. The Parties will thereafter meet and

3   confer regarding an alternative schedule for completion of the action that could not be performed, or an

4   alternative action. Any dispute regarding the applicability of this paragraph, or any future action to be

5   taken, that remains after the meet and confer session will be handled as a dispute pursuant to Paragraph

6   20.

7       32.   The Parties may execute and deliver this Consent Agreement in one or more

8   counterparts or copies, and each counterpart shall be deemed and original and, taken together, shall be

9   deemed to be the entire document.

10      33.   The Parties' signatures to this Consent Agreement transmitted by facsimile shall be

11  deemed binding.

12      34.   In the event that any of the provisions of this Consent Agreement is held by a court to

13  be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

14      35.   The language in all parts of this Consent Agreement, unless otherwise stated, shall be

15  construed according to its plain and ordinary meaning.

16      36.   The undersigned are authorized to execute this Consent Agreement on behalf of their

17  respective Parties and have read, understood and agreed to all of the terms and conditions of this

18  Consent Agreement. CSPA also affirms that it is authorized to enter into this Consent Agreement on

19  behalf of the organization known as Watershed Enforcers, and that Watershed Enforcers will be bound

20  by the terms of this Consent Agreement.

21      37.   This Consent Agreement shall be governed by, and construed and interpreted in

22  accordance with, the laws of the State of California.

23      38.   All agreements, covenants, representations and warranties, express or implied, oral or

24  written, of the Parties concerning the subject matter of this Consent Agreement are contained herein.

25      39.   If for any reason the Court should decline to approve this Consent Agreement in the

26  exact form presented, the Parties shall use their best efforts to work together to modify the Consent

27  Agreement within 30 days so that it is acceptable to the Parties and the Court. If the Parties are unable

28

16
[PROPOSED] CONSENT AGREEMENT AND ORDER - CASE NO.: 1:06-CV-00023-REC-LJO

to modify this Consent Agreement in a mutually acceptable manner, this Consent Agreement shall be immediately null and void.

40.     The settling Parties hereto enter into this Consent Agreement and submit it to the Court for its approval and entry as a final judgment.

Dated: April 5, 2006                    California Sportfishing Protection Alliance

By: _____
Bill Jennings
Executive Director

Dated: April ___, 2006                  Meridian Gold Company, Inc.

By: _____
Edgar A. Smith
Vice President Operations

APPROVED AS TO FORM:

Dated: April ___, 2006                  GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN

By: _____
Linda M. Dardarian
Attorneys for California Sportfishing Protection Alliance

Dated: April 4, 2006                    LAW OFFICES OF MICHAEL R. LOZEAU

By: _____
Michael R. Lozeau
Attorneys for California Sportfishing Protection Alliance

Dated: April ___, 2006                  FARELLA, BRAUN & MARTEL LLP

By: _____
Paul P. "Skip" Spaulding, III
David J. Lazerwitz
Attorneys for Meridian Gold Company, Inc.

17

1    to modify this Consent Agreement in a mutually acceptable manner, this Consent Agreement shall be

2    immediately null and void.

3         40.    The settling Parties hereto enter into this Consent Agreement and submit it to the Court

4    for its approval and entry as a final judgment.

5    Dated: April ___, 2006                         California Sportfishing Protection Alliance

6

7                                                   By:_____
                                                        Bill Jennings
8                                                       Executive Director

9
     Dated: April 11, 2006                          Meridian Gold Company, Inc.
10

11                                                  By:_____
12                                                      Edgar A. Smith
                                                        Vice President Operations
13

14   APPROVED AS TO FORM:

15   Dated: April ___, 2006                         GOLDSTEIN, DEMCHAK, BALLER, BORGEN
                                                    & DARDARIAN
16

17                                                  By:_____
                                                        Linda M. Dardarian
18                                                  Attorneys for California Sportfishing Protection
                                                    Alliance
19

20   Dated: April ___, 2006                         LAW OFFICES OF MICHAEL R. LOZEAU

21

22                                                  By:_____
                                                        Michael R. Lozeau
23                                                  Attorneys for California Sportfishing Protection
                                                    Alliance
24

25   Dated: April 11, 2006                          FARELLA, BRAUN & MARTEL LLP

26
                                                    By:_____
27                                                      Paul P. "Skip" Spaulding, M
                                                        David J. Lazerwitz
28                                                  Attorneys for Meridian Gold Company, Inc.

                                                   17
     [PROPOSED] CONSENT AGREEMENT AND ORDER - CASE NO.: 1:06-CV-00023-REC-LJO

1  to modify this Consent Agreement in a mutually acceptable manner, this Consent Agreement shall be

2  immediately null and void.

3      40.    The settling Parties hereto enter into this Consent Agreement and submit it to the Court

4  for its approval and entry as a final judgment.

5  Dated: April ___ , 2006                     California Sportfishing Protection Alliance

6

7                                              By:_____
                                                       Bill Jennings
8                                                      Executive Director

9
   Dated: April ___ , 2006                     Meridian Gold Company, Inc.
10

11
                                              By:_____
12                                                     Edgar A. Smith
                                                       Vice President Operations
13

14  APPROVED AS TO FORM:

15  Dated: April _11_ , 2006                   GOLDSTEIN, DEMCHAK, BALLER, BORGEN
                                               & DARDARIAN
16

17                                            By: _Linda M. Dardarian_

18                                                     Linda M. Dardarian
                                               Attorneys for California Sportfishing Protection
19                                             Alliance

20  Dated: April ___ , 2006                    LAW OFFICES OF MICHAEL R. LOZEAU

21

22                                            By:_____
                                                       Michael R. Lozeau
23                                             Attorneys for California Sportfishing Protection
                                               Alliance
24

25  Dated: April ___ , 2006                    FARELLA, BRAUN & MARTEL LLP

26

27                                            By:_____
                                                       Paul P. "Skip" Spaulding, III
28                                                     David J. Lazerwitz
                                               Attorneys for Meridian Gold Company, Inc.

                                          17
       [PROPOSED] CONSENT AGREEMENT AND ORDER - CASE NO : 1:06-CV-00023-REC-LJO

1    **ORDER**

2    WHEREAS, the Parties have consented to entry of the foregoing Consent Agreement and

3    requested the Court's approval and entry thereof; and

4    WHEREAS, pursuant to 33 U.S.C. § 1365 and 42 U.S.C. § 6972(b)(2)(F), Plaintiff California

5    Sportfishing Protection Alliance ("CSPA") has served the complaint herein on the United States

6    Attorney General and the Administrator of the United States Environmental Protection Agency;

7    WHEREAS, pursuant to 33 U.S.C. § 1365(c)(3), at least 45 days have elapsed since the United

8    States Attorney General was served on April 18, 2006, and the Administrator of the United States

9    Environmental Protection Agency was served on April 18, 2006 with copies of the Consent

10   Agreement; and

11   WHEREAS, pursuant to California Health & Safety Code § 25249.7(f), Plaintiff California

12   Sportfishing Protection Alliance has submitted to the California Attorney General a reporting form

13   enclosing the Consent Agreement as specified therein; and

14   WHEREAS, the Court has reviewed the Consent Agreement, and fully considered all

15   comments received thereon to date from the Parties hereto, the United States Attorney General, the

16   United States Environmental Protection Agency and the California Attorney General; and

17   WHEREAS, the Court has fully considered the Parties' request to enter this Consent

18   Agreement as an order; and

19   WHEREAS, the Court finds the Consent Agreement to be: (1) fair, adequate and reasonable;

20   (2) consistent with applicable laws; and (3) protective of the public interest; and

21   WHEREAS, the Court further specifically finds, for purposes of California Health & Safety

22   Code §§ 25249.5 and 25249.7(f), that: (1) the mitigation payments in lieu of penalties in Paragraphs 15

23   and 16 of the Consent Agreement are reasonable and appropriate in light of the statutory criteria set

24   forth in § 25249.7(b)(2); and (2) the attorneys' fee award payment in Paragraph 19 of the Consent

25   Agreement is reasonable under California law; and

26   WHEREAS, good cause appearing therefor,

27   1.   THIS CONSENT AGREEMENT AND ORDER IS HEREBY APPROVED AND

28   JUDGMENT IS ENTERED IN ACCORDANCE THEREWITH; and

1

2.      This Court shall retain and have jurisdiction over CSPA and Meridian Gold Company, Inc. with respect to implementation of the terms of their Consent Agreement and the resolution of any disputes that may arise under that Consent Agreement, as provided therein.

Dated: _____May 5_____, 2006

_____

Robert E. Coyle
United States District Court Judge